WEITZ v. WENHAM ET AL.

1. **FRAUDULENT ACTS SUBSEQUENT TO PURCHASE DO NOT DIVEST PURCHASER OF TITLE**

   If a dealer largely indebted, proposing to purchase goods, states the facts truly, and goods are then sold to him on credit, the title passes, and no subsequent fraudulent acts will divest him of the title, and reinvest it in the seller.

2. **CONFUSION OF GOODS.**

   A grocer largely indebted, purchased of a wholesale dealer, goods of an amount and quality suitable for retail in his business, and placed them in the original packages in his store, with like packages bought from other dealers. Such act was not a wrongfully intermingling of goods so as to justify the seller in taking all the unbroken packages, because he was unable to identify the ones he had sold.

JENNER, J. (orally).

This case is before the court on certain assignments of error claimed to have occurred in the trial below. The petition in replevin, is in the ordinary form. The answer of Grossman, assignee of Weitz, is a denial that the Wenhams were owners of the property described in the petition. He, further answering, says that under color of the writ of replevin plaintiffs below took property not described in the writ, and property of which they were not the owners. And he sets forth a schedule of property that he claims was so taken, and which they had no legal right to take under their writ, because they were not the owners of it.

The reply and the amendment to the reply admits that the plaintiff took the property under color of the writ of replevin, and avers that all the articles and property seized by the officer and delivered to the plaintiffs, in fact belonged to the plaintiffs, or was so wrongfully intermingled with the plaintiff's property that they could not distinguish and separate their own, therefore they had a right to take all.

There was a motion filed to make the reply more definite and certain, which was sustained, and a motion to strike out, which was overruled.

We think no prejudice resulted to the defendant below by reason of the overruling of said motion.

There was also an offer by plaintiffs to confess judgment before the case was tried, in the sum of $321, which was not accepted. The parties went to trial, and it is claimed by counsel for plaintiff in error that by reason of that offer he is entitled to a judgment for the sum of $321. We do not understand that to be the law. The offer to confess a judgment has only this effect: If a sum less than the amount offered had been recovered by the defendant below, the costs made after the offer should have been taxed against him; if he had recovered a larger sum, then all costs should have been taxed against the plaintiffs.

There are ten assignments of error, all covered by these: The court erred in the admission of evidence and the exclusion of evidence, in its charge to the jury, in refusing to charge as requested, and that the judgment is contrary to the law and the evidence. I must briefly refer to a portion of the testimony.

Weitz was engaged in carrying on a grocery store in Cleveland from March 1 to October 9, 1890—about six months. He had purchased a small stock of goods from the former occupant of the same room, and before doing so he called upon Wenhams and consulted them about the value of the stock which he subsequently purchased. It appears further that before he made any purchase of goods of Wenhams, they inquired what means he had to conduct business, and he said he had about $650 in money of his own, and could borrow about $350. It is ad-

mitted he purchased goods of Wenhams up to the time of the assignment. The aggregate amount purchased was about $1,400. This was paid except $500, at the time he made the assignment. He also owed his father-in-law $250, as he says, for which he, on the day before the assignment, executed a mortgage. He says he also owed another man $100, for which a mortgage was delivered.

When the Wenhams instituted their action in replevin, and the constable took possession of the store in the presence of two clerks of the Wenhams and another party, they took the goods claimed to belong to the Wenhams, and removed them to Wenhams' store, and there appraised or invoiced them.

The question arose on the trial as to how the valuation should have been made. The contention of defendant was that they ought to have been appraised at what they were worth at retail in the store; the other side insisting that was not the rule. It seems that the wholesale profit is about 8 per cent, the retail about 15 to 18 per cent.

This question was put to a witness: "You may describe to the jury the character and condition of the goods." And the witness proceeds to do this and says: "I don't think they were worth over 50 per cent or 60 per cent of the original wholesale price."

It is said the rule must be what the goods were worth to Weitz in his store. We understand this to be the rule: It is the market value all the time. They were not worth to him the retail price until he had sold them at the retail price. The goods were only worth to him what he could go into the market and buy the same kind of goods for and place them on his shelves. It is all the time the market value at the time and place named that must determine the value.

The important legal question discussed was this: What is the rule when goods are intermingled? An innocent party if he cannot separate his goods from those with which they have been wrongfully mingled, can he take all the goods so mixed and intermingled? What is the rule, even though one of the parties might be a wrong-doer? In 107 Mass., 123, from the syllabus: "If a mortgagor of goods mixes them, purposely or carelessly, with his own, and sells the whole, the mortgagee can replevy the whole from the purchaser in the absence of evidence to distinguish the mortgaged goods from those not mortgaged."

In 30 N. J. Equity, 291, *Jewett, Receiver,* v. *Dringer & Bowman,* this is the first proposition of the syllabus: "If a party having charge of the property of others so confounds it with his own that the line of distinction cannot be traced, all the inconvenience of the confusion is thrown upon the party who produced it, and it is for him to distinguish his own property or lose it." That seems to me to be a reasonable rule.

In 50 American Decisions, 627, *Hasseltine* v. *Stockwell,* the syllabus is as follows: "Confusion of goods has taken place when there has been such an intermixture of goods owned by different persons that the property of each can no longer be distinguished." And again, "But there is no forfeiture where the admixture has been made without fraud, nor even in case of fraudulent intermixture where the goods mixed are of equal value. In the latter case each owner takes his proportion of the whole."

In the 54th American Decisions, 582, it is said: "Confusion of goods is such a mixture of the goods of two or more persons that they cannot be distinguished."

And on page 591, "the civil law gave the whole property to the party who made the intermixture; but he remained liable in damages for the value of the goods taken to the party whose goods he had intermingled with his own. Here is a manifest encouragement of fraud, and the common law rule was directly the contrary, and gave the whole property to him whose property was first invaded, without any compensation to the wrong-doer. The severity of this rule has been modified, and it is now the rule that even where the mixture is wrongful and fraudulent, yet if the mass is composed of parts which are of equal quality and value, and if the proportion of the whole which each party originally owned is

known, the parties will be tenants in common, and each will be entitled to his proportion. But although the tenancy in common is conceded to exist here, the rights of the parties are by no means equal. Every intendment and presumption is against the wrong-doer. The burden of proof is upon him to establish his right, otherwise, the innocent party, who is to be protected at all events, will take the whole of the inseparable mass."

Encyclopedia of Law, 1st volume, page 57, cites numerous authorities to this effect: "Where one has confused his own goods with those of other persons, two things are requisite, namely: That the confusion be made fraudulently, and that after such confusion the articles be incapable of identification or apportionment. "Where the materials can be distinguished, there will be no forfeiture, and each party may claim his property."

We understand the law to be as above stated, and in the light of these authorities, we will look over a few pages of this record. I have stated what Weitz says as to the amount he had put into this business. I turn to the testimony of the constable, who was the agent of the law, and who had this writ of replevin. He was inquired of as to how he did this work.

Q. Isn't this, in fact, the way the thing was done; that these men who went with you said, "This is our stuff," handed it down, and you assumed it was called for by the writ and took it? A. Yes.

Q. That's the way the work was actually done? A. Yes.

On page 50 these questions were asked of a clerk of the Wenhams:

Q. You may state, Mr. Hesoun, what was done there; whether the constable had a writ describing the goods. A. Yes, he took us to take the goods that belonged to us.

Q. What did you do? A. We started in and took what we thought belonged to us.

Q. What you thought was covered by the writ? A. Covered by the writ, yes.

Q. What do you mean by the expression, "what belonged to us." A. I mean the goods we had sold to Weitz.

Q. Who took them down from the shelves? A. I took them down, and Keller took some down, and Eichhorn copied them as we took them out, every item and every pound of goods that went out of the store.

Q. You took all of the soap of the kind that Uditzki sells? A. Yes.

Q. Did you take all the spices you found there? A. Yes.

Q. Do you know whether Mr. Weitz had been buying spices of Stephen & Weidlar? A. I don't know a thing of the kind. I said we took the spices; we didn't know whether they were from Stephen & Weidlar or not.

Q. Are there not various people that deal in the same brand of soap as you do? A. Yes, every house in this city has about the same kind of soap.

Q. You bought them from other people? A. Yes.

Q. These same people sell others here in the city? A. I presume so.

Q. You took all the extracts there were there, didn't you? A. Yes.

Q. How is it about olive oil? A. Olive oils are sold by us.

Q. They are sold by other people too, aren't they? A. Yes.

Q. The same brand? A. Yes.

Q. You took all the olive oils that were there? A. Yes.

Q. You may state whether you could tell by examining these goods whether they were not from Wenham's store? A. I could not say that at all.

Q. Could you some of them? A. Yes, I could, some with Wenham's name on, I could tell them; but all these different wholesale houses handle these same goods pretty much.

Q. Did you take any goods there that Wenham & Co. didn't sell? A. No, sir.

Q. Did you know of Weitz buying goods of anybody else except Wenham's sons? A. No, sir, I didn't.

Uditzki says he sold them boxes of soap, and found eight boxes of soap there just before the assignment, and subsequent to the assignment it was all removed.

Now what is the charge of the court. You will find on page 270 the following: I am asked by plaintiff's counsel to charge you that if you find that the constable took the goods, and further find that such goods were wilfully so intermingled with such goods of the same line belonging to plaintiffs, that the defendant cannot recover the value of the goods so intermingled and taken. That I will charge you, and further I say, if you further find that said goods were so wrongfully intermingled with the goods of the same kind that plaintiffs could not identify their own goods, defendant cannot recover damages for the goods so confused and intermingled and taken by plaintiffs.

Is that the law? If the plaintiffs sent clerks who could not distinguish the goods, then they may take all they find, including what other wholesale dealers may have sold to this man? They can take the plaintiffs' boxes, and those sold by other parties, because the goods were intermingled, and that ends the matter. We do not think that is the law. We do not think they could go in there and take everything without any reference to what was in their writ, and without reference to whether it was paid for or not.

There is also this evidence: Wenham called on this assignee after he was appointed and in charge of the stock, and enquired of him as to what condition things were in. The assignee told him that he thought there was plenty of goods there to pay all the liabilities. That was objected to and excluded. Why? It is between the parties to the cause talking over this particular business immediately before the replevin suit. We think it was competent. That is the only evidence we hold there was error in excluding. For these reasons, we reverse this judgment for error in excluding evidence in the charge as given, because it is against the evidence.

*White, Johnson & McCaslin*, for Plaintiff in Error.

*E. W. Goddard, Esq.* and *Boynton & Horr*, for Defendants in Error.